**Curtis TYLER, et al., Appellants,**

**v.**

**Carl WHITE, et al., Appellees.**

**No. 85–2512.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1986.

Decided Feb. 19, 1987.

Paul N. Venker, St. Louis, Mo., for appellants.

Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before McMILLIAN and ARNOLD, Circuit Judges, and ARNOLD,* District Judge.

MORRIS SHEPPARD ARNOLD, District Judge.

This civil rights action, brought under 42 U.S.C. §§ 1981 and 1983, arises out of a disturbance that occurred in 1983 at the Missouri Training Center for Men (MTCM) near Moberly, Missouri. Plaintiffs, inmates at MTCM, claim that during this disturbance defendants, employees of MTCM, injured them physically in contravention of rights secured to them by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States. After a four-day jury trial, a verdict for defendants was returned on all counts. Plaintiffs appeal, alleging that the Magistrate who tried the case [1] erred in a number of ways during the trial. We take up each of plaintiffs' points in turn.

## I.

Plaintiffs assert that it was error to admit a photograph of a guard who was attacked and fatally stabbed during the disturbance. They characterize the photograph as a "graphic and gruesome depiction" and claim that its prejudicial effect clearly outweighed any probative value that it may have had. *See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322 (8th Cir.1985).

We disagree. The photograph possessed high probative value since a central factual issue in the case was the amount of force necessary to quell the disturbance. The photograph shows what the officers called to restore order saw when they en-

---

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Hon. David D. Noce, Magistrate for the Eastern District of Missouri.

tered the area of the disturbance and is therefore relevant on the issue of their perception of the seriousness of the situation. That being so, we entertain no serious doubt that the Magistrate acted within his discretion in admitting the picture. *See Pritchard v. Downie,* 326 F.2d 323 (8th Cir.1964); *Frank's Plastering Co. v. Koenig,* 341 F.2d 257 (8th Cir.1965). Indeed, the Magistrate acted most judiciously in selecting from among the three photographs offered the one which most objectively, and in the least inflammatory fashion, captured for the jury, in a way that testimony probably could not match, factual circumstances important to its decision.

## II.

■ Plaintiffs also claim that the Magistrate erred in refusing to allow them to cross-examine a defendant on his alleged transfer to another facility for carrying brass knuckles *after* the incident that gave rise to this complaint. Plaintiffs cite no cases in support of their position. Indeed, they do not even indicate on what theory they believe that this evidence is admissible. The Magistrate ruled that it was not relevant and, even if it were, that its probative value was outweighed by the prejudicial effect that it would generate. We agree and note, moreover, that evidence of a defendant's character, subject to exceptions not relevant here, "is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion...." Fed.R.Evid. 404(a).[2] This seems to have been exactly plaintiffs' theory for the admissibility of this evidence, for in their brief they urge that "carrying brass knuckles is certainly equivalent to carrying a blackjack," and conclude that "most people would be very suspicious of the 'peaceful nature' of someone carrying a blackjack."

If the admission of this evidence were sought to prove motive, opportunity, intent, or any of the other issues of fact enumerated in Fed.R.Evid. 404(b), we believe that its probative value is extremely limited, especially since it occurred after the incident giving rise to this lawsuit; and we therefore can hardly say that the Magistrate wrongly concluded that its probative value was exceeded by its prejudicial effect.

## III.

■ Plaintiffs further complain that the Magistrate erred in refusing to grant a mistrial when counsel for one of the defendants asked a plaintiff about his refusal to take a psychological stress examination, commonly referred to as a lie detector test. We find no merit in this assignment of error. The Magistrate sustained the objection to the question and instructed the jury to disregard it and the answer to it. Under the circumstances, we cannot say that resort to the extraordinary remedy of a mistrial was required in this instance. The Magistrate's refusal to grant a mistrial was not "inconsistent with substantial justice." *See Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.,* 368 F.2d 679 (8th Cir.1966).

## IV.

The final point that plaintiffs raise has to do with a statement made by defense counsel in closing argument. In plaintiffs' own closing argument, their counsel called attention to the fact that certain of the defendants had failed to testify; and they invited the jury to infer from that fact that their testimony would have been damaging to the defense. Such arguments about missing witnesses are commonly made and we have frequently countenanced them. *See, e.g., Johnson v. Richardson,* 701 F.2d 753 (8th Cir.1983); *see also* 2 J. Wigmore, *Evidence* 192 (J. Chadbourn ed. 1979). Over plaintiffs' objection, defendants' counsel in his summation remarked that the defendants who did not testify were equally available to the plaintiffs, and invited the jury to draw the inference that, since plaintiffs did not call them, their testimony

---

**2.** Even if character evidence were admissible here, it would have to come in the form of opinion evidence or testimony as to reputation. *See* Fed.R.Evid. 405(a).

would have been damaging to the plaintiffs. This was in accordance with the Magistrate's ruling that it was "fair argument to argue that all parties are equally available to everyone else as witnesses."

We begin our consideration of this point with the observation that its determination depends on federal common law and that we have no decided case directly on point in this circuit. It is true that in *Iowa Cent. Ry. Co. v. Hampton Electric L. & P. Co.*, 204 F. 961 (8th Cir.1913), we held that no inference is allowable to either party where the witness is equally available to both parties. This rule is criticized by Professor Wigmore, who argues persuasively that "the more logical view is that the failure to produce is *open* to an inference *against both parties*, the particular strength of the inference against each depending on the circumstances." 2 J. Wigmore, *Evidence* 206–08 (J. Chadbourn ed. 1979) (emphasis in original). We might be inclined to adopt Professor Wigmore's suggestion on this point, but we believe that there are circumstances here that keep that point from coming directly before the court.

 Those circumstances are that an inference such as the one defendant's counsel urged here to the jury "is clearly not a proper one where the person in question is one who by his position would likely be so *prejudiced* against the party that the latter could not expect to obtain from him ... unbiased testimony." 2 J. Wigmore, *Evidence* 202 (J. Chadbourn ed. 1979) (emphasis in original). We believe that this rule is recommended by authority and by its intrinsic logic, and we therefore adopt it. Sometimes the reason for the rule is said to be that in such instances a witness is not "equally available" to both parties. What is meant by "equal availability" in this context is not merely that a witness is subject to compulsory process, and thus available in a descriptive sense, but that he is of equal avail to both parties in the sense that he is not presumptively interested in the outcome. This accounts for the statement, sometimes encountered in the cases, that one party is never equally available to

another. *See, e.g., Pasternak v. Mashak*, 428 S.W.2d 565 (Mo.1967), *cert. denied*, 390 U.S. 907, 88 S.Ct. 821, 19 L.Ed.2d 872 (1968).

 It follows that the Magistrate erred in allowing defendant's counsel to argue to the jury that it could draw an inference adverse to the plaintiffs from their failure to call certain defendants as witnesses. It does not necessarily follow, of course, that the case should be reversed. An error, in order to be reversible, must affect a substantial right of the objecting party, and the burden of showing prejudice rests on that party. *Square Liner 360°, Inc. v. Chisum*, 691 F.2d 362 (8th Cir.1982). In the instant case, the verdict was supported by so much other evidence that we are reluctant to overturn it, after a four-day trial, on the weight of so small and technical an error as this. We note, too, that we have frequently alluded to the freedom properly allowed counsel in arguing their cases to juries. *See, e.g., Duncan v. St. Louis-San Francisco Railway Co.*, 480 F.2d 79, 84–85 (8th Cir.1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973). The case might therefore be different if the jury's right to draw the inference urged here by defendants' counsel had been urged on it by the court in its instructions. Finally, juries are instructed that they may use their common sense and such wisdom as they have gained from experience to weigh testimony and evaluate arguments. We very much doubt that a person of ordinary prudence would infer a great deal from the failure of plaintiff to call defendants as witnesses in this case.

V.

For the reasons given, we affirm the judgment of the court below.